IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| STEWART T.,[1] | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Civil No. 3:22-cv-612-MHL-SLS |
| | ) | |
| MARTIN O'MALLEY, | ) | |
| Commissioner of the | ) | |
| Social Security Administration,[2] | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

In this action, Plaintiff Stewart T. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny his Title II application for disability insurance benefits. This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment. (ECF Nos. 14, 17.) The motions have been fully briefed (ECF Nos. 14, 15, 17, 18), rendering the matter ripe for review.

Plaintiff requests that the Commissioner's decision be vacated and remanded for a *de novo* hearing and new decision. (Plaintiff's Memorandum of Law in Support of a Motion for Summary Judgment (ECF No. 15) ("Pl.'s Mem.") at 11.) As the basis for such relief, Plaintiff argues that the Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") determination is

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for Acting Commissioner Kilolo Kijakazi as Defendant in this action. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

not supported by substantial evidence because the ALJ improperly evaluated the medical opinion evidence.  (Pl.'s Mem. at 1.)  Specifically, Plaintiff contends the RFC determination improperly fails to include sufficient limitations on his ability to reach and handle, even though such limitations were recommended by Jack Hutcheson, Jr., M.D. ("Dr. Hutcheson") and Augustina Nyeche, N.P. ("N.P. Nyeche").  (Pl's Mem. at 7-11.)  The Commissioner counters that substantial evidence supports the ALJ's RFC determination and that any error in failing to include more stringent manipulative limitations would be harmless in any event.  (Defendant's Motion for Summary Judgment and Brief in Support (ECF No. 17) ("Def.'s Mem.") at 1-2.)

For the reasons set forth below, the Court concludes that the ALJ properly assessed the medical opinion evidence in accordance with the regulations and that substantial evidence supports the ALJ's RFC determination.  In addition, the Court agrees with the Commissioner that the alleged error in failing to include additional manipulative limitations would be harmless error. Therefore, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 14) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 17) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I.      PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits on July 16, 2020, alleging disability beginning June 14, 2020.  (Administrative Record ("R.") at 116, 222-27.)[3]  Plaintiff alleged he was unable to work due to a traumatic brain injury, tendinitis (in the

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for the year of birth), and financial account numbers from this Report and Recommendation. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

right and lower shoulder), migraine headaches, radiculopathy (in the bilateral lower extremities), chronic lumbar back strain with cirrhosis, flat feet, patellofemoral stenosis (in the bilateral knees), cervical spine disc disease, sleep apnea, and acid reflux.  (R. at 222.)  The SSA denied Plaintiff's claims initially and again upon reconsideration.  (R. at 128-34, 143-44.)  Plaintiff requested a hearing before an ALJ, and one was held on May 13, 2022.  (R. at 35-72, 182-83.)

On May 31, 2022, the ALJ issued a written decision, holding that Plaintiff was not disabled under the Social Security Act ("the Act") from June 14, 2020 (the alleged onset date) through the date of the decision.  (R. at 15-28.)  On July 19, 2022, the SSA Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (R. at 1-5.)  Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II.     STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).  At step one, the ALJ must review the claimant's current work activity to determine if he or she has been participating in substantial gainful activity.  20

C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ must ask whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ must determine whether the medical impairment(s) meet or equal an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's RFC, which accounts for the most that the claimant can do despite his or her impairments. *Id.* § 404.1545(a).

At step four, the ALJ must assess whether the claimant can perform his or her past employment given the claimant's RFC. *Id.* § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue,* 667 F.3d 470, 472 (4th Cir. 2012). If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. § 404.1520(e). However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* § 404.1520(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert ("VE"). *See Mascio,* 780 F.3d at 635.

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio,* 780 F.3d at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock,*

667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts."  *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).  Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion.  *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]."  *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d at 589.  The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight."  *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).  If a fact is supported by substantial evidence, the reviewing court must affirm, regardless of whether the court agrees with such findings.  *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).  If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision.  *See Breeden*, 493 F.2d at 1007.

### III.     THE ALJ'S DECISION[4]

The ALJ analyzed Plaintiff's disability claim in accordance with the five-step evaluation process.  (R. at 15-28.)  *See* 20 C.F.R. § 404.1520(a)(4); *Mascio*, 780 F.3d at 634.  At step one, the

---

[4] Plaintiff challenges the ALJ's decision as it relates to the evaluation of medical opinions addressing his reaching and handling abilities stemming from physical impairments.  (Pl.'s Mem. at 6.)  Therefore, the Court limits its analysis of the ALJ's decision to those portions addressing physical impairments, and more specifically those that may impact reaching and handling.

ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 14, 2020

(the alleged onset date).  (R. at 18.)  At step two, the ALJ determined Plaintiff had the following

severe impairments: degenerative disc disease of the lumbar and cervical spine, pes planus (flat

feet), obstructive sleep apnea, hepatic steatosis, headaches, type 2 diabetes mellitus, and obesity.

(R. at 18.)  The ALJ found additional impairments alleged by Plaintiff to be non-severe medically

determinable impairments, including hypertension, neuropathy, right shoulder tendinitis, and

patellofemoral stenosis of both knees.  (R. at 18.)  Regarding Plaintiff's right shoulder, the ALJ

noted that "a few examinations showed range of motion in both shoulders, with pain and right

trapezius muscle spasms in his right shoulder, but examination findings were otherwise normal."

(R. at 18 (internal record citations omitted).)   The ALJ determined that Plaintiff's shoulder

condition "caused only transient and mild symptoms and limitations, ha[d] been responsive to

treatment and/or medication, ha[d] not met the 12-month durational requirement, or [was]

otherwise not adequately supported by the medical evidence in the record."  (R. at 18.)  Although

non-severe, the ALJ considered these impairments in assessing Plaintiff's RFC.  (R. at 18.)

At step three, the ALJ determined that Plaintiff did not have an impairment, individually

or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  (R. at 20-22.)

The ALJ then determined Plaintiff's RFC.  (R. at 22-27.)  Based on the evidence in the

record, the ALJ determined that Plaintiff retained the ability to perform light work as defined in

20 C.F.R. § 404.1567(b) with the following limitations:

> [Plaintiff] is able to lift, carry, push and pull 20 pounds occasionally and 10 pounds
> frequently, but can only occasionally push and pull with the bilateral upper
> extremities.  He can stand and/or walk six hours in an eight-hour workday and sit
> six or more hours in an eight-hour workday.  He is able to frequently climb ramps
> and stairs, and occasionally climb ladders, but never ropes and scaffolds.  He can
> balance without limitations, and occasionally kneel, stoop, crouch, and crawl.  He

can frequently but not constantly handle, finger, and feel with his bilateral upper extremities.  He can occasionally tolerate exposure to concentrated cold, and can occasionally tolerate exposure to concentrated hazards such as unprotected heights or moving machinery.

(R. at 22.)  The ALJ explained that he determined Plaintiff's RFC after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p."  (R. at 22.)

The ALJ first summarized Plaintiff's reported symptoms and hearing testimony.  (R. at 22-23.)  Plaintiff alleged disability based on tendinitis in his right and lower shoulder, chronic lumbar back strain with cirrhosis, cervical spine disc disease, as well as other impairments.  (R. at 22-23.)  He reported having to sell his house due to back pain and problems negotiating the stairs, being unable to tie his shoes without back problems, and being unable to comfortably lift any weight at all.  (R. at 23.)  Plaintiff said he can walk for five to ten minutes.  (R. at 23.)  Although he does not use a cane or other ambulatory device, he "leans on whatever is nearby" as needed.  (R. at 23.)  For example, although he reported avoiding shopping, when he does shop, he leans on the cart.  (R. at 23.)  Plaintiff reported "sometimes ha[ving] difficulty opening things[, and] . . . sometimes need[ing] help with handling a brush, buttons, or zippers."  (R. at 23.)  Plaintiff testified he has more difficulty with his left hand.  (R. at 23.)  Plaintiff said he retired because "work caused stress and headaches."  (R. at 23.)

Although the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ determined that Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the evidence in the record.  (R. at 23.)  The ALJ acknowledged Plaintiff's "long history of back problems" but noted that Plaintiff "managed his symptoms with Toradol

injections, a hot tub, a TENS unit, and medications." (R. at 23.)  Physical examinations showed lower back pain, occasional episodes of decreased muscle strength in Plaintiff's hips and lower extremities, and decreased range of motion and tenderness related to back pain.  (R. at 23.) However, Plaintiff generally exhibited a normal gait and did not use an assistive device for walking. (R. at 23.)  "As for his cervical spine, he had normal range of motion." (R. at 23.)

The ALJ reviewed the October 2020 consultative examination, which showed a normal gait, "4/5 strength in [Plaintiff's] bilateral shoulders but otherwise 5/5 strength throughout," a "decreased range of motion with forward flexion in his thoracolumbar spine, backward extension, external rotation, and internal rotation of his bilateral shoulder, and bilateral hip flexion, but otherwise normal range of motion, and no joint abnormalities." (R. at 23.)  The ALJ also considered November 2020 x-rays, which showed "very minor degenerative changes and minimal alignment abnormality in [Plaintiff's] lumbar spine, and multilevel degenerative changes in his cervical spine." (R. at 23-24.)  To address his back pain, Plaintiff engaged in aquatic and physical therapy and a home exercise program.  (R. at 24.)  Plaintiff reported doing well and being able to manage his symptoms without a flare up.  (R. at 24.)  In addition, Plaintiff stated he walked for exercise, instead of jogging or biking, to avoid a flare up.  (R. at 24.)  Plaintiff also took prescription medication to address muscle spasms, stiffness, and back pain.  (R. at 24.)

The ALJ also considered Plaintiff's other alleged impairments and the extent of associated limitations, including Plaintiff's headaches, diabetes, liver disease, sleep apnea, pes planus, and obesity.  (R. at 24-25.)

The ALJ found that that "various factors [were] inconsistent with limitations to the degree alleged" by Plaintiff.  (R. at 25.)  Primarily, the ALJ pointed to the minimal and conservative treatment received by Plaintiff since the alleged onset date.  Plaintiff managed his symptoms and

had improvement with Toradol injections, a TENS unit, medications, and aquatic and physical therapy. (R. at 25.) The record did not reflect any discussions of more aggressive treatment for neck or back pain. (R. at 25.) Next, lumbar and cervical spine exams showed "few abnormalities," and while imaging showed degenerative changes, nothing indicated stenosis or a nerve impingement. (R. at 25.) The ALJ also relied on Plaintiff's ability to perform a wide range of daily activities, with some limitations when experiencing flares of back pain. (R. at 25.) The ALJ found that Plaintiff's "other conditions" were under "good control" with "minimal treatment since the alleged onset date." (R. at 25.) The ALJ concluded: "Taken together, the record suggests [Plaintiff's] impairments impose some limitations, but the degree of limitation that is consistent with the record has been accounted for by the restrictions noted in the residual functional capacity above." (R. at 25.)

The ALJ then "considered the medical opinions and prior administrative medical findings in accordance with the requirements of 20 CFR 404.1520c." (R. at 22.) Relevant to Plaintiff's assignment of error, the ALJ reviewed the opinions of state agency reviewing physician Eugene Noland, M.D. ("Dr. Noland"), state agency reviewing physician Dr. Hutcheson, and N.P. Nyeche. (R. at 25-26.)

In January 2021, Dr. Noland concluded Plaintiff could perform light work, occasionally climb, stoop, kneel, crouch, or crawl, frequently balance, and frequently reach overhead with his bilateral upper extremities. (R. at 25.) In December 2021, Dr. Hutcheson opined Plaintiff could perform light work, but frequently climb ramps or stairs, occasionally climb ladders, ropes, or scaffolds, engage in unlimited balancing, occasionally stoop, kneel, crouch, or crawl, occasionally reach, occasionally push/pull, and should avoid concentrated exposure to extreme cold and hazards. (R. at 25.) The ALJ founds these opinions supported by references to evidence of

Plaintiff's pain, cervical and lumbar spine changes, and reduced strength in his shoulders, and normal gait.  (R. at 25-26.)  But the ALJ found them not entirely consistent with other evidence showing generally unremarkable examinations and conservative management of Plaintiff's symptoms.  (R. at 26.)  While the ALJ found these opinions "generally persuasive," he did not adopt them in whole.  Specifically, the ALJ determined Plaintiff could frequently climb ramps and stairs, occasionally climb ladders, and never climb ropes or scaffolds, whereas Dr. Noland recommended an occasional limitation for all climbing.  (R. at 22, 25-26.)  The ALJ also found that Plaintiff could occasionally push/pull with his upper extremities but rejected Dr. Hutcheson's opinion that Plaintiff should be otherwise limited in reaching.  (R. at 22, 25-26.)

N.P. Nyeche concluded that Plaintiff could lift and carry up to 10 pounds frequently and up to 20 pounds occasionally, sit for about six hours and stand or walk for four hours during an eight-hour workday, occasionally reach, handle, and grasp bilaterally, frequently feel bilaterally, occasionally bend, and never stoop, kneel, or squat.  (R. at 26.)  While N.P. Nyeche "supported her opinion with her examination findings," it was not entirely consistent with the other evidence in the record again showing generally unremarkable examination findings and symptom management through conservative treatment.  (R. at 26.)  The ALJ found N.P. Nyeche's opinion persuasive with respect to Plaintiff's ability to perform light work, but not persuasive with respect to the manipulative and postural work limitations.  (R. at 26.)

The ALJ summarized the RFC determination as follows:

Based on the foregoing, the undersigned finds [Plaintiff] is limited to performing light work with standing and/or walking and sitting for six hours in an eight-hour workday, except he [is] limited to occasionally pushing and pulling with his bilateral upper extremities due to his cervical and lumbar degenerative disc disease. His cervical and lumbar degenerative disc disease, together with his headaches, obesity, type 2 diabetes mellitus, pes planus, hepatic steatosis, and obstructive sleep apnea, further limit him to frequently climbing ramps or stairs, occasionally climbing ladders, never climbing ropes or scaffolds, occasionally kneeling,

stooping, crouching, and crawling, frequently handling and fingering, occasional exposure to cold and hazards (such as unprotected heights or moving machinery).

(R. at 26-27.)

After completing the RFC assessment, the ALJ then determined Plaintiff's vocational factors. The VE testified that an individual with Plaintiff's vocational factors would be able to perform Plaintiff's past occupations of program manager and chief personnel officer "as generally and actually performed." (R. at 27.) Based on the VE's testimony and after comparing the RFC with the work demands of Plaintiff's past relevant work, the ALJ found Plaintiff capable of performing the program manager and chief personnel officer roles both as generally and actually performed. (R. at 27.) Under 20 C.F.R. § 404.1520(e), if Plaintiff can perform his past relevant work, then the inquiry ends at step four. Thus, the ALJ did not, and was not required to, analyze whether there were other jobs in significant national numbers that Plaintiff could perform. The ALJ concluded that Plaintiff has not been under a disability from June 14, 2020 through the date of decision. (R. at 28.)

## IV.   ANALYSIS

In reviewing the Commissioner's decision to deny Plaintiff's application, the Court must determine whether: (1) the ALJ has applied the correct legal standards; and (2) the ALJ's findings are supported by substantial evidence. *Mascio*, 780 F.3d at 634 (citing *Bird*, 699 F.3d at 340). "In reviewing for substantial evidence, [a court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record. *See Hays v. Sullivan*,

907 F.2d 1453, 1456 (4th Cir. 1990); *Rhyne v. Astrue*, No. 3:09-cv-412, 2011 WL 1239800, at *3 (W.D.N.C. Mar. 30, 2011).

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because he failed to properly evaluate the medical opinions of Dr. Hutcheson and N.P. Nyeche with respect to Plaintiff's manipulative limitations, specifically reaching and handling. (Pl's Mem. at 6-11.) Plaintiff asserts that the ALJ failed to explain why limitations to occasional reaching and handling were excluded from the RFC and improperly cherrypicked evidence to support his rejection of such limitations. (Pl.'s Mem. at 7-8.) In response, the Commissioner contends that substantial evidence supports the ALJ's RFC determination, or in the alternative, any error would be harmless because Plaintiff could perform his past relevant work as actually performed even with an occasional reaching and handling limitation. (Def.'s Mem. at 11-16.) For the reasons that follow, this Court concludes that the ALJ properly assessed the medical opinion evidence in accordance with the regulations and that substantial evidence supports the ALJ's RFC determination. Moreover, even if the ALJ erred by not including a limitation of occasional reaching and handling in the RFC, such err would be harmless.

**A. The ALJ Applied Correct Legal Standards in Evaluating Dr. Hutcheson and N.P. Nyeche's Opinions, and Substantial Evidence Supports the RFC Determination**

*1. Evaluating Medical Opinion Evidence for Claims Filed on or After March 27, 2017*

Claims involving medical opinion evidence filed on or after March 27, 2017 are evaluated using a revised regulatory framework. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. This framework applies in Plaintiff's case. (Pl.'s Mem. at 6-7.) The revised regulations provide that the ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight,

to any medical opinion(s) . . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources, no matter the source. 20 C.F.R. § 404.1520c(a)-(b).

Under the regulations, the ALJ must evaluate each medical opinion and articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and requirements. *Id*. § 404.1520c. Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered in the written opinion. *Id.* § 404.1520c(b)(2). The regulations define supportability and consistency as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* § 404.1520c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. *Id.* § 404.1520c(b)(2).

### 2. Medical Opinions Pertaining to Physical RFC Assessment

On October 11, 2020, N.P. Nyeche examined Plaintiff and prepared a Medical Consultant Report. (R. at 368-74.) N.P. Nyeche listed Plaintiff's diagnoses as cervical and lumbar pain, bilateral shoulder instability, left ankle pain, and high blood pressure. (R. at 372.) N.P. Nyeche

noted under a history section that Plaintiff had "torn a ligament in his left ring finger, [and] had hand surgery with pins placed in the finger." (R. at 368.)

Plaintiff reported he could bath/shower and eat on his own and that he could dress on his own when his back pain was controlled. (R. at 368.) At the examination, Plaintiff removed his socks and shoes without assistance. (R. at 369.) N.P. Nyeche noted a normal range of motion in Plaintiff's fingers, elbows, and wrists but a below normal range in his shoulders. (R. at 370-72.) He generally had a normal range of motion in his cervical spine and thoracombular spine. (R. at 371.) On exam, Plaintiff's shoulder abduction strength was 4/5 and his grip strength was 5/5. (R. at 371.) N.P. Nyeche reported some tenderness to palpation for both shoulders but no swelling. (R. at 372.) N.P. Nyeche noted a normal joint exam for Plaintiff's hands and wrists, stating: "No deformity, tenderness of swelling. Able to sequentially touch each finger to thumb without difficulty. Able to make a fist without difficulty." (R. at 372.)

Following the consultative exam, N.P. Nyeche found Plaintiff could frequently lift and carry up to 10 pounds, occasionally lift and carry up to 20 pounds, sit for about six hours, and stand or and/or walk for about four hours. (R. at 372-73.) For manipulative activities, N.P. Nyeche opined that Plaintiff could occasionally reach and handle bilaterally and occasionally grasp in the left hand. (R. at 373.) N.P. Nyeche also stated that Plaintiff could occasionally bend, but never stoop, kneel, or squat. (R. at 373.)

On December 21, 2021, state agency reviewing physician, Dr. Hutcheson, concluded that Plaintiff could perform light work with exertional, postural, manipulative, and environmental limitations. (R. at 124-25.) For exertional limitations, Dr. Hutcheson opined Plaintiff could frequently lift or carry up to 10 pounds, occasionally lift or carry up to 20 pounds, occasionally push or pull in upper extremities, and could stand and/or walk about six hours in an eight-hour

workday and sit for about six hours in an eight-hour workday.  (R. at 124.)  Dr. Hutcheson recommended the following postural limitations: frequently climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; and occasionally kneel, crouch, crawl, or stoop.  (R. at 124.)  He supported the exertional and postural limitations based on "cervical and lumbar spine changes, [and] [r]educed strength in shoulders and normal gait."  (R. at 124.)  For manipulative limitations, Dr. Hutcheson found Plaintiff could occasionally reach in front, laterally, or overhead and could handle, finger, and feel without limitation.  (R. at 125.)  He recommended these limitations due to "[r]educed strength in shoulders, cervical changes on x-rays."  (R. at 125.)  Finally, for environmental limitations, Dr. Hutcheson found Plaintiff should avoid concentrated exposure to extreme cold and hazards.  (R. at 125.)

Although Plaintiff challenges the ALJ's assessment of Dr. Hutcheson and N.P. Nyeche's medical opinions, the ALJ also considered the opinion of Dr. Noland, a state agency reviewing physician who conducted a physical RFC assessment.  (R. at 109-15.)  In a report dated January 26, 2021, Dr. Noland found that Plaintiff could perform light work; occasionally lift and/or carry up to 20 pounds; frequently lift and/or carry up to 10 pounds; stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; occasionally climb, stoop, kneel, crouch, or crawl; frequently balance; and no more than frequently reach overhead with his bilateral extremities.  (R. at 109-12.)  Dr. Noland supported his assessment by noting Plaintiff's report of shoulder pain and bilateral shoulder strength of 4/5.  (R. at 112.)  Dr. Noland also documented that Plaintiff could "sequentially touch each finger to his thumb and make a fist without difficulty" and "can take his off his shoes and socks without difficulty."  (R. at 112.)

    *3.  The ALJ's Analysis of Medical Opinions Regarding Handling and Reaching is*
       *Supported by Substantial Evidence and Complies with the Law*

The ALJ found the opinions of Drs. Noland and Hutcheson generally persuasive and that of N.P. Nyeche's persuasive to the extent it found Plaintiff able to perform light work.  (R. at 26.) The ALJ explained that Drs. Noland and Hutcheson supported their conclusions by "referring to evidence of [Plaintiff's] pain, cervical and lumbar changes, with reduced strength in his shoulders and normal gait."  (R. at 25-26.)  The ALJ determined that N.P. Nyeche "supported her opinion with her examination findings, including 4/5 bilateral shoulder strength, limited range of motion in [Plaintiff's] thoracolumbar spine, shoulders, and hips, and some paraspinal muscle tenderness, but were otherwise unremarkable."  (R. at 26.)  However, the ALJ found these opinions not entirely consistent with the other evidence in the record "showing that while [Plaintiff] had some occasional abnormalities on examination, such as 4/5 strength in his hips and lower extremities, somewhat limited range of motion, tenderness to palpation, and occasional positive straight leg raise, other examination findings were generally unremarkable, and his symptoms were otherwise managed conservatively."  (R. at 26 (internal record citations omitted).)

As relevant to Plaintiff's challenge, the ALJ declined to adopt Dr. Hutcheson's occasional reaching limitation and N.P. Nyeche's occasional reaching and handling limitation as inconsistent with the record.  (R. at 22, 25-26.)  Instead, the RFC determination included a limitation on occasionally pushing and pulling with the bilateral upper extremities but found Plaintiff could frequently handle, finger, and feel with his bilateral upper extremities.  (R. at 22.)  The ALJ's decision, when viewed as a whole, provides a sufficient narrative discussion linking the evidence to the ALJ's determination and allowing for meaningful review.  *See Todd A. v. Kijakazi*, No. 3:20cv594 (DJN), 2021 WL 5348668, at *8 (E.D. Va. Nov. 16, 2021) (finding that the ALJ's opinion must be read as a whole); *Monroe*, 826 F.3d at 189 (noting that the ALJ must "build an

accurate and logical bridge from the evidence to his conclusion"). Specifically, the ALJ summarized the record evidence regarding Plaintiff's medically determinable impairments, both severe (degenerative disc disease of the lumbar and cervical spine, flat feet, obstructive sleep apnea, hepatic steatosis, headaches, type 2 diabetes mellitus, and obesity) and non-severe (hypertension, neuropathy, right shoulder tendinitis, and patellofemoral stenosis of both knees). (R. at 18-27.) The ALJ then evaluated the intensity, persistence and limiting effects of symptoms caused by Plaintiff's impairments. (R. at 22-27.) Importantly, Plaintiff did not list any impairment of his hands as a reason he stopped working. (*See* R. at 222.) Therefore, the focus of the ALJ's decision in terms of manipulative limitations rested on an analysis of Plaintiff's cervical and lumbar degenerative disc disease and shoulder tendinitis. (R. at 18, 22-27.)

Regarding the cervical and lumbar degenerative disc disease, the record showed a long history of back problems with symptoms managed by Toradol injections, a hot tub, a TENS unit, and medications. (R. at 23.) Although physical examinations of the back supported Plaintiff's reports of pain and showed decreased strength in lower extremities, decreased range of motion in back, and tenderness to palpation, they also generally showed a normal gait. (R. at 23.) Plaintiff had a normal range of motion for his cervical spine. (R. at 23.) As for impairments of the shoulder, the ALJ noted that Plaintiff's shoulder examinations were normal, except for a few examinations that showed "range of motion in both shoulders, with pain and right trapezius muscle spasms in his right shoulder." (R. at 18.) The ALJ noted that Plaintiff's shoulder pain and other non-severe impairments have caused "only transient and mild symptoms and limitations, have been responsive to treatment and/or medication, have not met the 12-month durational requirement, or are otherwise not adequately supported by the medical evidence in the record." (R. at 18.)

17

The ALJ considered N.P. Nyeche's consultative examination. (R. at 23.) The ALJ highlighted certain findings, including the 4/5 strength in Plaintiff's bilateral shoulders and a decreased range of motion in his bilateral shoulders, but otherwise noted the exam as reflecting a normal range of motion and no joint abnormalities. (R. at 23.) That includes the examination showing a 5/5 grip strength, a normal joint exam for Plaintiff's hands and wrist, and Plaintiff's ability to "sequentially touch each finger to thumb without difficulty" and ability to "make a fist without difficulty." (R. at 372.)

While the ALJ acknowledged Plaintiff's testimony about him sometimes having difficulty opening things and sometimes needing help with fastening buttons or zippers and using a brush,[5] the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the record, including the evidence summarized above, Plaintiff's activities of daily living,[6] and the minimal treatment received for his conditions.

---

[5] At the hearing, Plaintiff reported having an "okay" grip strength. (R. at 53.) Plaintiff stated he was starting to get pains in his knuckles and related that to a prior surgery on his fingers. (R. at 53.) When asked if he could hold onto things, Plaintiff responded in the affirmative although he stated that he may occasionally drop things. (R. at 54.) He also attested to sometimes needing his wife to open a bottle for him, but then said "that's been years because of this – this hand, trying to hold stuff. And that was until I had the surgery, but it's gotten better." (R. at 54.) He later testified to having issues buttoning his collar sometimes and needing to ask his wife to open a jar. (R. at 62.) Plaintiff thought it might be arthritis but had not yet been seen by a doctor about those issues. (R. at 53, 63.)

[6] On an undated Function Report, Plaintiff checked that he had trouble using his hands, but failed to check that he had trouble reaching. (R. at 279.) In this same Report, Plaintiff reported trouble dressing, bathing, or shaving but attributed it to back pain flare ups. (R. at 275.) He stated that he was unable to cook due to memory issues, could mow the grass on a riding lawn mower, and could drive a car. (R. at 276-77.) On another Function Report dated August 23, 2020, Plaintiff checked that he had difficulty reaching, but not using his hands. (R. at 234.) In this same Report, Plaintiff stated that he had difficulty with dressing, bathing, shaving, or using the toilet again when experiencing back pain. (R. at 230.) Otherwise, he reported being able to prepare his own meals twice a week, cut grass using a riding mower, drive a car, go out alone, and shop, both online and in person. (R. at 231-33.) He noted that he could not "reach over [his] head long" (R. at 234.) Overall, Plaintiff did not allege significant difficulty with reaching and handling when performing daily tasks, including personal care, driving a car, and mowing the lawn with a riding lawnmower.

(R. at 23.)   Indeed, the medical experts offered differing opinions regarding Plaintiff's manipulative abilities, and the ALJ reasonably assessed those opinions and reconciled the record evidence with Plaintiff's testimony in arriving at the RFC determination.  Viewing the decision as a whole, the ALJ satisfied the regulations when he assessed Dr. Hutcheson's and N.P. Nyeche's opinions and properly supported and explained his rejection of their manipulative limitations with substantial evidence.

In arguing otherwise, Plaintiff contends that ALJ erred in conducting the consistency analysis by providing only "vague and conclusory" statements that the opinions were not consistent with generally unremarkable examinations and conservative treatment and by failing to "fashion a logical bridge between the evidence and his RFC determination."  (Pl.'s Mem. at 7-8 (citing R. at 26).)  The Court disagrees.  As discussed above, the ALJ's decision includes sections analyzing what physical examinations and the consultative examination revealed, including generally unremarkable examinations.  (R. at 23.)  The decision similarly outlines the various treatment received for both severe and non-severe impairments and characterizes the treatment as conservative.  (R. at 18, 23-25.)  The ALJ did not err by referencing these unremarkable examinations and conservative treatment which he discussed in detail earlier in his decision.

The cases cited by Plaintiff (Pl.'s Mem. at 8-9) are distinguishable.  In *Donell F. v. Kijakazi*, the United States District Court for the District of Maryland found that the ALJ failed to create a logical bridge between the RFC determination and imaging data evidence.  No. GLS-21-2399, 2023 WL 203351, at *4 (D. Md. Jan. 17, 2023).  While the ALJ cited to and said he considered the imaging data evidence, the ALJ failed to explain what the imaging data showed and how it led the ALJ to the RFC determination.  *Id.*  In other words, the ALJ failed to provide a "narrative discussion linking the evidence to his ultimate conclusion."  *Id.*  This failure precluded

"meaningful review" and resulted in a remand.  *Id.* at \*5.  Plaintiff also cites to *Woods v. Berryhill*, in which the Fourth Circuit found the ALJ failed to explain how he concluded, based on the evidence, that the plaintiff could perform medium exertional work.  888 F.3d 686, 694 (4th Cir. 2018).  Plaintiff then asserts that the ALJ here "offered even less explanation" than in those decisions, as he "did not even cite to any specific evidence, and instead offered only vague reference to 'generally unremarkable' examination findings" or citations to sections of the record without "explain[ing] how [the cited evidence] led him to conclude the opinions were 'not entirely consistent.'" (Pl's Mem. at 8-9.)  Unlike in *Donell F.* and *Woods*, and as discussed above, the ALJ here summarized the evidence and what it showed, explained how that evidence impacted his analysis of Plaintiff's symptoms and resulting limitations, and provided a logical bridge between the evidence and the concluded RFC determinations, including the manipulative limitations included therein.[7]

Plaintiff next asserts that the ALJ cherry-picked "allegedly unremarkable evidence without even providing the Court with a meaningful explanation of said evidence."  (Pl's Mem. at 9.) Plaintiff supports this argument by citing *Cloninger v. Kijakazi*, in which the court found remand

---

[7] Plaintiff argues that the ALJ "cited to sections 1F, 6F, and 7F of the record" without explaining "how this led him to conclude the opinions were 'not entirely consistent.'" (Pl.'s Mem. at 9.)  The ALJ's evaluation of Dr. Hutcheson's opinion also referenced exhibit 4F.  (R. at 26.) The ALJ provided these record citations directly following his conclusion that the record showed otherwise "unremarkable" examinations and conservative treatment.  (R. at 26.)  These exhibits include: (1) a summary of Plaintiff's medical reports at Hunter Holmes McGuire VA Hospital ("the VA"); (2) Dr. Nyeche's report to support Dr. Hutcheson's report; (3) a "problem list" report from the VA; and (4) Plaintiff's MyHealtheVet summary.  These exhibits included notes of Plaintiff's back pain, degenerative joint disease, and neck pain and related treatment received.  (*See, e.g.*, R. at 298-300, 306, 618.)  They also reflected Plaintiff's treatment, including medication, use of a personal TENS unit, Toradol injections, use of a hot tub, and physical and aquatic therapy.  (R. at 316, 318, 426-27, 439-40, 623.)  The ALJ's decision previously outlined these exhibits and explained his view of them and their impact on his conclusions.  The ALJ did not err in citing to these exhibits to support his conclusion.

proper in part because the ALJ "appeared to have cherry-picked facts that support a finding of nondisability while ignoring evidence that points to a disability finding." (Pl.'s Mem. at 9); No. 3:20-cv-508, 2021 WL 3885921, at *3 (W.D.N.C. Aug. 31, 2021). Plaintiff further points out that before declaring the physical examinations generally unremarkable, the ALJ contemporaneously listed several findings that Plaintiff contends were consistent with the medical opinions at issue. (Pl's Mem. at 9.) Unlike in *Cloninger*, the ALJ here did not cherry-pick evidence.

As an initial matter, and as Plaintiff concedes (Pl.'s Mem. at 9), the ALJ acknowledged evidence consistent with Plaintiff's alleged limitations and the medical opinions at issue, including examination findings consistent with Plaintiff's degenerative disc disease and back pain. (R. at 26). Therefore, the ALJ did not cherry-pick favorable evidence while ignoring unfavorable evidence. In addition, these "positive findings" identified by the ALJ pertain to exertional or postural limitations, not manipulative limitations. Therefore, the ALJ's acknowledgement of those positive findings does not otherwise call into question the ALJ's assessment of Plaintiff's manipulative abilities. Moreover, the ALJ does not commit error by finding certain portions of the record consistent with and other portions inconsistent with a medical opinion. As argued by the Commissioner, by referencing the "positive findings in Plaintiff's lower back and extremities, as compared to the less significant and pervasive findings in his cervical spine and upper extremities," the ALJ "plainly drew a distinction" between what impairments and resulting symptoms translate into limitations and those that do not. (Def.'s Mem. at 14-15.)

Plaintiff also argues that the ALJ committed error by "fail[ing] to identify how Plaintiff's treatment was conservative." (Pl's Mem. at 10.) While there is no definition of "conservative" medical treatment in the regulations, it is commonly understood as encompassing treatments less invasive than surgery. *See Fred A. P. v. Kijakazi*, No. 3:21cv378 (MHL), 2022 WL 3656855, at

*11 (E.D. Va. Aug. 9, 2022), *report and recommendation adopted* 2022 WL 3648182 (Aug. 24, 2022); *Jason W. v. Saul*, No. 7:19cv352, 2020 WL 5578969, at *8 (W.D. Va. Sept. 17, 2020). Indeed, the Fourth Circuit has held that a treatment was not conservative when it involved multiple surgeries, as well as powerful painkillers, nerve blocks, and ablation.  *See Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017).[8]

Here, the ALJ summarized Plaintiff's treatment relating to his degenerative disc disease to include "Toradol injections, as well as aquatic and physical therapy, medications, and a TENS unit."  (R. at 25.)  Regarding Plaintiff's other conditions, the ALJ noted "minimal treatment" resulting in the conditions being under "good control."  (R. at 25.)  The ALJ characterized this level of treatment as conservative.  (R. at 25.)  The ALJ found this conservative treatment, along with other "[v]arious factors[,] . . . inconsistent with limitations to the degree alleged" by Plaintiff. (R. at 25.)  The ALJ also found the limitations opined by N.P. Nyeche and Dr. Hutcheson not entirely consistent with this conservative treatment and other factors.  (R. at 26.)  The ALJ did not err by characterizing the treatment as conservative, and a review of the record supports a finding that the treatment was indeed conservative.  As noted above, Plaintiff's treatment mostly concerned pain management with the use of therapy, painkillers, and other prescriptions.  It included no reference to the need for surgery relating to impairments impacting Plaintiff's manipulative limitations.  Therefore, the Court finds no error.

---

[8] Additionally, for mental health impairments, the Fourth Circuit has acknowledged that "where claimants consume antidepressant, anticonvulsant, and/or antipsychotic drugs, consistently attend visits with mental health professions, and endure constant medication adjustment and management, their treatment is classified as anything but 'routine and conservative.'"  *Shelley C. v. Comm'r of Social Sec. Admin.*, 61 F.4th 341, 363 (4th Cir. 2023).

**B. Any Error Would Be Harmless Because Plaintiff Failed to Offer Evidence that His Past Relevant Work as Performed Involved Frequent Reaching and Handling**

A claimant will be found "not disabled" if he is capable of performing "the actual functional demands and job duties" of the past relevant work, *or* "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." SSR 82-61. *See* 20 C.F.R. 404.1520(e); *Pass v. Charter*, 65 F.3d 1200, 1207 (4th. Cir. 1995) ("[U]nder the fourth step of the disability inquiry, a claimant will be found "not disabled" if he is capable of performing his past relevant work either as he performed it in the past or as it is generally required by employers in the national economy.")  Since the test is disjunctive, a determination that Plaintiff is not disabled under either measure is conclusive. *Tovar v. Astrue*, No. 3:09-cv-100, 2009 WL 4067387, at *9 (E.D. Va. Nov. 23, 2009) (citing *Pass*, 65 F.3d at 1205).

Here, even if the ALJ erred in failing to include an occasional reaching and handling limitation in the RFC, such error would be harmless because Plaintiff did not offer evidence to show that his past relevant work involved frequent reaching and handling as actually performed. *See Bowen,* 482 U.S. at 146 n.5 (1987) (stating that the claimant bears the burden of showing "at step four that the impairment prevents him from performing his past work"); *David L.H. v. Kijakazi*, No. 3:21v189 (MRC), 2022 WL 4485812, at *5 (E.D. Va. Sept. 27, 2022) ("The burden of establishing a harmful error rests on 'the party attacking the agency's determination.'" (citation omitted)).  Therefore, the ALJ's conclusion that Plaintiff could perform his past relevant work would still stand, as the result would not have been different. *David L.H.*, 2022 WL 4485812, at *5 (citing *Shineski v. Sanders*, 556 U.S. 396, 409 (2009)) (stating that in reviewing for harmless

error, a court must contemplate, among other factors, "an estimation of the likelihood that the result would have been different").

At the hearing, Plaintiff did not challenge the ALJ's characterization of Plaintiff's prior work performed as involving "a lot of information systems work," including sitting at a computer and interacting with others in his similar position. (R. at 44-46.)  In fact, Plaintiff attested that he "did budgeting, civilian personnel actions, [and] equipment accountability . . . ."  (R. at 46.)  Plaintiff testified that he stopped working due to headaches and back issues related to lifting.  (R. at 46, 48, 50.)  Plaintiff's attorney at the hearing asked if Plaintiff felt he had the mental acuity, not the reaching and handling ability, to perform his past work.  (R. at 64.)  The ALJ proffered hypotheticals to the VE which included the ability to "frequently but not constantly … handle, finger, and feel with the bilateral upper extremities . . . ."  (R. at 69.)  Plaintiff did not object, and Plaintiff's counsel did not ask about the impact on the VE's testimony if an occasional handling or reaching limitation were added to the RFC.  (R. at 69.)  The VE testified that an individual with Plaintiff's vocational factors would be able to perform Plaintiff's past occupations of program manager and chief personnel officer "as generally and actually performed."  (R. at 27.)  Based on the VE's testimony and after comparing the RFC with the work demands of Plaintiff's past relevant work, the ALJ found Plaintiff capable of performing the program manager and chief personnel officer roles both as generally and actually performed.  (R. at 27.)

Moreover, the record contains other evidence showing that Plaintiff's past relevant work required no more than occasional handling or reaching.  On Plaintiff's undated Work History Report, he attested that in his past three jobs (self-reported as executive assistant, "operator LNO," and assignment officer), as well as his program manager position, he did not reach; handled, grabbed, or grasped big objects for half an hour each day; and wrote, typed, or handled small

objects for three hours a day.  (R. at 255-58, 260.)  In his remaining reported job, as an assistant program manager, he reported no reaching; handling, grabbing, or grasping big objects for two hours a day; and writing, typing, or handling small objects for two hours a day.[9]  (R. at 255, 259.)  The medical opinion of Dr. Noland found Plaintiff *could* perform his past relevant work despite the recommended limitations in reaching.  (R. at 114.)  Dr. Hutcheson opined Plaintiff *could* perform his past relevant work of executive assistant as actually performed.  (R. at 126.)  Dr. Hutcheson noted Plaintiff "did not indicate any reaching requirements at his past work which allows him to participate in past work as actually performed since he has occasional reaching limitations currently."  (R. at 126.)

"[I]f an ALJ fails to account for a limitation in his or her hypothetical to a VE, a court will not recommend remand if the omission would not change the substance of the decision."  *Ross v. Berryhill*, No. 3:18cv42, 2019 WL 289101, at *12 (E.D. Va. Jan. 3, 2019), *report and recommendation adopted* 2019 WL 281191 (E.D. Va. Jan. 22, 2019) (citing *Morgan v. Barnhart*, 142 F. App'x 716, 723 (4th Cir. 2005)).  Here, the record establishes that Plaintiff could perform his past relevant work as he actually performed it even if the ALJ had adopted an occasional reaching or handling limitation.  Therefore, Plaintiff has not met his burden of showing he could not do his past relevant work as he actually performed it, and any error would be harmless.  *See, e.g., Elsie P. v. Comm'r of Soc. Sec.*, No. 2:21cv375, 2022 WL 4244600, at *7 n.5 (E.D. Va. Apr. 27, 2022), *report and recommendation adopted* 2022 WL 3586209 (E.D. Va. Aug. 22, 2022)

---

[9] It is unclear based on this handwritten form whether Plaintiff included a decimal in front of the time for each of these job activities, making it either ".2" hours (or 12 minutes) for each or "2" hours for each.  (R. at 259.)  Even adopting the two-hour per workday number, this past relevant work would still comply with an occasional reaching and handling limitation as actually performed.  *See* SSR 83-10, 1983 WL 31251, at *5 ("'Occasionally' means occurring from very little up to one-third of the time.").

(concluding that "even if Plaintiff could not perform any challenged postural activities, it would be harmless error because she could still perform her past relevant work and would not be disabled"); *Arguello v. Saul*, No. 4:19cv42, 2020 WL 1301654, at *11 (E.D. Va. Mar. 2, 2020), *report and recommendation adopted* 2020 WL 1290596 (E.D. Va. Mar. 18, 2020) (finding that although the ALJ erred by not limiting Plaintiff to an RFC with only frequent handling, such error was harmless because "even if [the] ALJ . . . had incorporated a frequent handling limitation in his RFC finding, he still would have concluded at step 4 that [the claimant] could perform her past relevant work as a title clerk because the job required only 'frequent' handling").

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 14) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 17) be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to the Honorable United States District Judge M. Hannah Lauck and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar**

**you from attacking on appeal the findings and conclusions accepted and adopted by the**

**District Judge except upon grounds of plain error.**

 

 

 

                                         /s/

                                    Summer L. Speight
                                    United States Magistrate Judge

Richmond, Virginia
Date: February 2, 2024